**SO ORDERED.**

**SIGNED this 16 day of May, 2013.**

_____
**J. Rich Leonard**
**United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
RALEIGH DIVISION

IN RE:

ECAST CORPORATION,                        CASE NO. 12–06564–8–JRL

   DEBTOR.                                CHAPTER 7

_____

### ORDER

This matter came before the court on Cerner Multum, Inc.'s ("Cerner Multum") motion to compel the cure payment called for under a license agreement executed by Cerner Multum and eCast Corporation ("debtor"), which is opposed by David M. Warren ("trustee"). A hearing on the matter was held on May 8, 2013 in Raleigh, North Carolina.

The debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 13, 2012. By consent order entered on March 7, 2013, the trustee was appointed as the chapter 11 trustee to administer the case. On April 12, 2013 and after determining that the debtor was unable to effectuate a plan of reorganization, the debtor's case was converted to one under chapter 7.

1

The debtor is a corporation that was formed in 1999 to provide physicians, independent practice associations, and other medical organizations with medical records information through an integrated platform of web–based components. On December 28, 2006, Cerner Multum and the debtor executed a license agreement, under which the debtor was granted a license to use certain drug–specific information and intellectual property to operate its proprietary electronic medical record ("EMR") software ("license agreement"). In exchange, the license agreement required the debtor to remit an annual fee, which was calculated based on the number of end–users utilizing the debtor's EMR.[1] As of the petition date, the debtor owed Cerner Multum an annual fee under the license agreement in the amount of $12,855.00.[2]

On November 15, 2012, this court entered an order allowing the debtor's emergency motion to sell certain assets (including software, licenses, hardware, code, patents, customers lists, books, records and training materials) necessary for the operation of its proprietary EMR operations to

---

[1]The license agreement required an annual minimum payment of $11,400.00, which was based on a fee of $100.00 per total end–user up to 114 total end users. In the event the debtor exceeded 114 total end–users, the annual fee required for each additional end–user will be based on the following table:

| Number of End–Users | Annual Fee Per End–User |
|---|---|
| 1–114 | $100.00 |
| 115–249 | $100.00 |
| 250–399 | $90.00 |
| 400+ | $85.00 |

[2]Schedule F, filed by the debtor on October 8, 2012, listed Cerner Multum as holding an unsecured nonpriority claim in the amount of $12,855.00. However, the debtor's Schedule G, describing all executory contracts and unexpired leases, did not list the license agreement with Cerner Multum.

Global Record Systems for $100,000.00.³ Included in the assets purchased by Global Record Systems were the rights previously licensed to the debtor by Cerner Multum. Despite acquiring and continuing to use the license, neither the debtor nor Global Record Systems paid the $12,855.00 owed under the license agreement.

Prior to the conversion to chapter 7, Cerner Multum filed the motion currently before the court, seeking an order compelling the payment of the cure payment, $12,855.00, which it is owed under the license agreement. Despite Global Record Systems' continued use of the license, Cerner Multum contends that neither Global Record Systems nor the debtor paid the $12,855.00 cure payment required for assumption and subsequent assignment of the license agreement. On April 8, 2013, the trustee filed a response objecting to the relief requested by Cerner Multum.

Section 365 of the Bankruptcy Code⁴ permits a debtor–in–possession, subject to court approval, to assume or reject any executory contract of the debtor unless "there has been a default . . . ." 11 U.S.C. § 365(a), (b)(1); In re Eagle Creek Subdivision, LLC, 397 B.R. 758, 761 (Bankr. E.D.N.C. 2008) (holding that the debtor–in–possession could not assume contracts with a real estate

---

³On March 26, 2013, this court entered an order confirming the sale of the debtor's remaining assets to Eugene Hoeberechts and Woen van Andel for the sum of $41,000.00, which was declared the last and highest bid of a public sale held on March 21, 2013. The debtor's remaining assets that were sold at the public sale on March 21, 2013, were described both in the notice of public sale and order confirming the same as follows:

> (1) office furniture, fixtures, equipment and supplies; (2) servers and computers (including monitors, keyboards, printers, printers, laptops, etc.); (3) accounts receivable; (4) 100% ownership interest in eC Research, LLC; (5) all rights, title and interest in the proprietary software and any assets related thereto with respect to Annual Wellness Care and Surveillance ("AWACS") services; (6) business going concern; and (7) any other miscellaneous property of the estate.

⁴All section references, unless otherwise indicated, are to the Bankruptcy Code, Title 11 of the United States Code.

3

developer that were terminated prior to the filing of its bankruptcy petition). Where there has been a default under an executory contract, however, assumption is precluded unless the debtor–in–possession "(A) cures, or provides adequate assurance that [it] will promptly cure, such default . . .; (B) compensates, or provides adequate assurance that [it] will promptly compensate, a party . . . for any actual pecuniary loss . . .; and (C) provides adequate assurance of future performance under such contract . . ." 11 U.S.C. § 365(b)(1). Furthermore, an executory contract or unexpired lease may be assigned if the debtor–in–possession "assumes such contract or lease in accordance with the provisions of this section; and . . . adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease." Id. § 365(f)(2).

Cerner Multum relies on Krikor Dulgarian Trust v. Unified Management Corp. of R.I. (In re Peaberry's Ltd.), 205 B.R. 6, 9–10 (1st B.A.P. 1997), as support for its contention that § 365(b)(1) compels the immediate payment of the $12,855.00 as adequate assurance and as a condition of the debtor's assumption and subsequent assignment of the license agreement to Global Record Systems. In Peaberry's, the debtor operated several restaurants in Rhode Island, including one on real property it leased from Krikor Dulgarian Trust ("Krikor"). 205 B.R. at 7. Following its chapter 11 filing, the bankruptcy court authorized the debtor's assumption of the previously executed lease and ordered "[a]s adequate assurance of future performance, the debtor . . . pay all rental arrearages in full . . . from the proceeds of the sale of the debtor's assets." Id.[5] Following the sale of all the debtor's property (including the assignment of the lease) and conversion of the case to chapter 7,

---

[5]Including those arrearages accruing postpetition, the debtor owed $62,460.00 in unpaid rent under the lease.

4

Krikor moved to compel the payment of the pre–assumption arrearages that remained unpaid, which was denied by the bankruptcy court. Id. at 6–8. On appeal, the bankruptcy appellate panel reversed and held that Krikor was entitled "to full payment of pre–assumption rent arrearages . . . under the terms of the bankruptcy court's earlier–entered order authorizing Peaberry's assumption of the . . . lease . . . ." Id. at 6, 9–10. In reaching its conclusion, the appellate panel observed that the bankruptcy court's order "plainly state[d] that as 'adequate assurance' of its lease performance Peaberry's would pay 'all rental arrearages in full' from the proceeds of its asset sale." Id. at 8 (emphasizing that "§ 365(b)(1)(A), a provision enacted for the specific purpose of setting permissible conditions for lease assumptions, expressly empowered Krikor Dulgarian to insist upon and obtain adequate assurance of cure as a prerequisite to Peaberry's lease assumption."); see id. at 8 n.4 (raising, without addressing, whether Krikor Dulgarian waived its rights to pre–assumption arrearages by permitting the sale to close without obtaining full payment); accord In re Rich's Dep't Stores, Inc., 209 B.R. 810, 815–16 (Bankr. D. Mass. 1997) (holding, regardless of the status of the lessors' postpetition and pre–rejection claims for delinquent rent, that immediate full payment of such claims is required to enforce the court's prior orders , with no possibility of later disgorgement by a chapter 7 trustee if the debtor's estate later proved to be administratively insolvent).

     Cerner Mutlum's reliance, however, is misplaced because the facts of the instant case are distinguishable from those in Peaberry's in several respects. Contrary to Peaberry's, this court did not issue an order requiring, as a condition of the debtor's assumption and assignment of the license agreement to Global Record Systems, that Cerner Multum receive the $12,855.00 cure payment. See Peaberry's, 205 B.R. at 9–10. Additionally, Cerner Multum did not voice any opposition to nor did it demand that the debtor cure the delinquency prior to the debtor's assignment of its rights under

5

the license agreement to Global Record Systems, or insist that the debtor make the cure payment from the sale proceeds.

The court finds, based on the record, that the $12,855.00 owed to Cerner Multum under the license agreement is not entitled to priority over the debtor's other administrative expenses. All administrative claims are to be treated equally; however, "when a case is converted to chapter 7, a pre–conversion § 503(b) administrative expense claim is explicitly subordinated to a post–conversion § 503(b) claim." CIT Commc'ns Fin. Corp. v. Callaway, (In re Midway Airlines Corp.), 406 F.3d 229, 241 (4th Cir. 2005) (citing 11 U.S.C. § 726(b)); accord, 11 U.S.C. § 348(d) ("A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 . . . of this title, other than a claim specified in section 503(b) of this title, shall be treated for a purposes as if such claim had arisen immediately before the date of the filing of the petition."). Section 726(b) provides that where a case has been converted to chapter 7 pursuant to § 1112, "a claim allowed under section 503(b) of this title incurred . . . after such conversion has priority over a claim allowed under section 503(b) . . . incurred under any other chapter of this title or under this chapter before such conversion . . . ." 11 U.S.C. § 726(b); In re Kaleidoscope of High Point, Inc., 56 B.R. 562, 565 (Bankr. M.D.N.C. 1986) ("Section 726(b) provides that Chapter 7 administrative expenses have priority over Chapter 11 administrative expenses." (citations omitted)). Therefore, when § 726(b) is read in conjunction with §§ 348(d), 503 and 507(a)(1), the debtor's post–conversion chapter 7 administrative expenses enjoy a superpriority position over Cerner Multum's claim, which was incurred during the pendency of the chapter 11 case and prior to conversion. See Kaleidoscope of High Point, 56 B.R. at 565.

The debtor's case was subsequently converted to one under chapter 7 after the assignment

of the license to Global Record Systems and, therefore, Cerner Multum's claim for the unpaid amount due under the license agreement, like all allowed pre–conversion administrative expenses, is subordinated to the post–conversion administrative expenses allowed under § 503(b). See, e.g., 11 U.S.C. 726(b); Midway Airlines, 406 F.3d at 241–42.

Based on the foregoing and in accordance with the court's ruling at the conclusion of the hearing, Cerner Multum's motion to compel is **DENIED**. In accordance with the trustee's concession, Cerner Multum will be allowed a chapter 11 administrative expense claim for $12,855.00, which is subordinate to the post–conversion administrative expense claims allowed pursuant to § 503(b) and §726(b).

**END OF DOCUMENT**